OPINION
{¶ 1} Leslie G. Karales (nka Golan), plaintiff-appellant, appeals from a judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, in which the court addressed various post-decree motions filed by Leslie and Stephen P. Karales, defendant-appellee.
 {¶ 2} The parties were married on May 11, 1991, and were subsequently granted a divorce on February 9, 1998. Two children were born as issue of the marriage: Michael Karales, born May 25, 1992, and Catherine Karales, born June 23, 1993. Pursuant to the agreement, Leslie was designated the residential parent and legal custodian of the children, and Stephen was granted a modified Loc.R. 27 parenting schedule. Stephen was ordered to pay child support in the child support guidelines amount of $471.28 per month, plus processing charge. Numerous post-decree motions followed, including the following, which were the subject of the magistrate's order and the trial court's judgment presently under review: (1) Stephen's motion to modify parental rights, filed May 31, 2002; (2) Stephen's motion to interview children, filed October 28, 2002; (3) Stephen's motions for contempt, filed October 28, 2002 and February 11, 2003; (4) Stephen's motion to compel discovery, filed March 21, 2003; (5) Leslie's motion to dismiss, filed June 26, 2002; (6) Leslie's motions for contempt, filed August 1, 2002 and August 11, 2003; (7) Leslie's motion requesting the guardian ad litem ("GAL") conduct interviews, filed April 14, 2003; (8) Leslie's motions to interview minor children, filed May 23, 2003; (9) Leslie's motion to dismiss, filed April 15, 2003; (10) Leslie's motion to compel discovery, filed May 23, 2003; (11) Leslie's motion to modify parenting time, filed August 11, 2003; (12) Leslie's motion for continuance, filed January 5, 2004; and (13) the GAL's motion for fees, filed September 20, 2003. Relevant to the issues in the motions to modify parenting time was the accusation by Catherine that Stephen had sexually abused her and the resulting supervised visitation between Stephen and the children.
 {¶ 3} Hearings were held regarding the above motions on numerous dates from October 2003 to June 2004. On March 7, 2005, the magistrate issued a decision with findings of fact and conclusions of law, in which the magistrate dismissed as moot Leslie's June 26, 2002 motion to dismiss, Leslie's April 15, 2003 motion to dismiss, Leslie's April 14, 2003 motion for the GAL to interview witnesses, Leslie's January 5, 2004 motion for continuance, Stephen's March 21, 2003 motion to compel discovery, and Leslie's May 23, 2003 motion to compel discovery; and granted Leslie's May 23, 2003 and Stephen's October 28, 2002 motions to interview the minor children. With regard to Leslie's and Stephen's motions to modify parenting time, as pertinent to this appeal, the trial court made several modifications to the parenting time schedule; found a substantial change in circumstances warranting modification of the child support order; found the current guideline amount unjust and inappropriate and not in the best interest of the children; ordered Stephen to pay total child support of $350 per month, plus processing charge; and ordered the extraordinary uncovered health care expenses to be split 25 percent Stephen and 75 percent Leslie. With regard to the GAL's motion for fees, the magistrate ordered that the balance due of $5,727 be split 25 percent Stephen and 75 percent Leslie. With respect to the parties' motions for contempt, the magistrate found Stephen in contempt and ordered him to pay Leslie's attorney fees, and denied Stephen's contempt motions. The magistrate found no evidence that Stephen had sexually abused Catherine and determined that her allegations were the result of her mother's influence, thereby warranting the phasing in of unsupervised parenting time for Stephen. Both parties filed objections to the magistrate's decision.
 {¶ 4} On July 20, 2005, the trial court issued a decision and entry, in which it sustained the magistrate's decision, except it granted Leslie's request that Stephen choose a therapist covered under her health insurance plan and granted Leslie's request for a change in the exchange location for the children's supervised and unsupervised parenting time. The trial court also granted Stephen's request for attorney fees and ordered Leslie to pay $9,000. Leslie appeals the judgment of the trial court, asserting the following six assignments of error:
1. THE TRIAL COURT ERRED, ABUSED ITS DISCRETION, AND RULED AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE WHEN IT SUSPENDED SUPERVISED PARENTING TIME FOR THE DEFENDANT.
2. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION WHEN IT ORDERED THE DEFENDANT TO PARTICIPATE IN FAMILY COUNSELING OR
REUNIFICATION COUNSELING RATHER THAN REUNIFICATION COUNSELING. FURTHER, THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION WHEN IT ORDERED THAT THE DEFENDANT SHALL HAVE THE RIGHT TO SELECT THE FAMILY THERAPIST OR REUNIFICATION THERAPIST RATHER THAN THE PLAINTIFF BEING AFFORDED THE OPPORTUNITY TO SELECT THE APPROPRIATE COUNSELOR.
3. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION WHEN IT GRANTED A DEVIATION IN CHILD SUPPORT AND REDUCED THE CHILD SUPPORT OBLIGATION TO BE PAID BY DEFENDANT[.]
4. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION WHEN IT ORDERED A DEVIATION IN THE DEFENDANT'S CHILD SUPPORT OBLIGATION AND, BASED UPON THIS REDUCED CHILD SUPPORT AMOUNT, REALLOCATED THE PAYMENT OF UNCOVERED MEDICAL EXPENSES FOR THE CHILDREN BETWEEN THE PLAINTIFF AND THE DEFENDANT.
5. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION WHEN IT ALLOCATED THE PAYMENT OF THE FEES OF THE GUARDIAN AD LITEM AND ORDERED THE PLAINTIFF TO PAY 75% OF THE FEES AND THE DEFENDANT TO PAY ONLY 25% OF THE FEES.
6. THE TRIAL COURT ERRED AND ABUSED [ITS] DISCRETION WHEN IT ORDERED THE PLAINTIFF TO PAY TO THE DEFENDANT THE SUM OF $9,000.00 AS AND FOR ATTORNEY FEES[.]
 {¶ 5} Leslie argues in her first assignment of error that the trial court erred when it modified the parenting time for Stephen from supervised to unsupervised. An appellate court must review a trial court's visitation decision with deference under the abuse of discretion standard. King v. King (1992),78 Ohio App.3d 599, 602. An abuse of discretion exists when the trial court's decision is unreasonable, arbitrary, or unconscionable.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219. There is no abuse of discretion where there is some competent, credible evidence supporting the trial court's decision. Ross v. Ross
(1980), 64 Ohio St.2d 203, 208.
 {¶ 6} Leslie first asserts that, contrary to the trial court's decision, the weight of the evidence supports a finding that Stephen should not have unsupervised parenting time with the children. Leslie points to the opinions of the children's therapist, Stephayne Harris, and a forensic psychologist, Karla Voyten, who both believed supervised parenting time should be continued even if Stephen did not abuse the children because the children believe they were abused. Leslie also points to her own testimony, in which she contended that the children expressed reservations and fear about parenting time with their father. Leslie further asserts the children expressed a preference that supervised parenting time be maintained.
 {¶ 7} After reviewing the record, we find no abuse of discretion. The trial court's and magistrate's visitation conclusions were based largely upon credibility determinations. As for the sexual abuse allegations against Stephen, the magistrate found such allegations had not been proven. The magistrate found the children's stated fears of their father and their allegations of threatening behavior to be "less than credible," and believed they would say "just about anything" to have the parenting time supervised. The magistrate found the children were rewarded by Leslie when they related negative things about parenting time with Stephen. The trial court also did not believe that sexual abuse had taken place. The court noted that the physician at Children's Hospital obtained no information from Catherine during an interview that would support sexual abuse, and the physician believed Leslie was guiding Catherine's responses by speaking to her in Spanish during the interview. The trial court also noted the GAL could not conclude any abuse had occurred. As for the experts relied upon by Leslie, the magistrate found Harris somewhat "timid" and "lacking in self-confidence," and discounted Voyten's assessment because she had met with Catherine for only one and one-half hours and did not have any of the evidence presented at trial to formulate her conclusions. The magistrate also found unconvincing Voyten's assessment that Catherine does not possess the ability to keep herself safe in an unsupervised visitation situation, given Catherine's past behavior of reporting the alleged abusive acts.
 {¶ 8} In sum, the magistrate's ordering of unsupervised visitation was based upon the lack of any reason to have supervised visitation, given the magistrate's view that no abuse had taken place and the experts who urged supervised visitation were unconvincing. The magistrate and trial court both suggested that the difficulties Stephen was having with the children were based largely on Leslie's alienating tactics, and the record is replete with examples to support such alienating acts by Leslie. Given the magistrate and trial court were in the best position to view the credibility of the witnesses, we have no reason to question such determinations. The trial court's visitation order incorporates a progressive unsupervised visitation schedule to allow the parties to incrementally acclimate to the change, and also included a plan for family counseling during this period. We fail to find any abuse of discretion. Therefore, Leslie's first assignment of error is overruled.
 {¶ 9} Leslie argues in her second assignment of error that the trial court erred when it ordered Stephen to participate in family counseling or reunification counseling, when it should have required only reunification counseling. Leslie asserts reunification therapy is necessary to repair the relationship between the children and Stephen. In response to Leslie's objection on this issue, the trial court concluded that there was no evidence presented that reunification therapy was necessary or would be more beneficial than any other type of family therapy. The trial court also noted that Leslie's insurance does not include coverage for any reunification therapists, and it was unnecessary for Stephen to pay out-of-pocket fees for a type of therapy that was not shown to be necessary or any more effective than family therapy.
 {¶ 10} We concur with the trial court's view on this issue. Although Harris and Voyten testified as to reunification therapy and how it may be beneficial, there was no evidence that reunification therapy would achieve better results for this situation than family counseling. We fail to see how family counseling will not be adequate to address the relationship issues pertinent to Stephen and the children, many of which seem to be caused by Leslie's alienating tactics. Further, the GAL believed that either type of therapy would be useful. Also, it is important to note that, except for a few periods when Leslie refused parenting time between the children and Stephen, visitation between them has been consistent over numerous years, and the parent-child relationship does not need to be "re-established" in the classic sense. Thus, we find the trial court did not err when it ordered that Stephen could choose between reunification therapy or family therapy.
 {¶ 11} Leslie also argues under this assignment of error that the trial court erred in ordering that Stephen should select the counselor to conduct the therapy. Leslie asserts that, because the parties are required to use a counselor that is covered under her insurance plan, she is the best person to know or determine a therapist that is covered by her insurance. This argument is unavailing. Despite the parties' prior unwillingness to communicate reasonably with each other, obviously Leslie may expedite Stephen's choosing of a therapist by providing him with a provider list containing the names of therapists covered under her insurance. Failure to do so may only cause delays which, in effect, punish the children. Therefore, requiring her to choose the counselor due to her own unwillingness to communicate the names of the counselors that are covered under her insurance is not a sufficient reason to reverse the trial court's judgment. This argument is without merit, and Leslie's second assignment of error is without merit.
 {¶ 12} Leslie argues in her third assignment of error that the trial court erred and abused its discretion when it granted a deviation in child support and reduced the child support obligation to be paid by Stephen. The trial court found that there had been a substantial change in circumstances requiring a modification of the child support order, then the court found the current guideline amount of $471.28 per month to be unjust and inappropriate and not in the best interest of the minor children, and ordered Stephen to pay $350 per month, plus processing charge, for child support.
 {¶ 13} A trial court has considerable discretion in the calculation of child support, and, absent an abuse of discretion, an appellate court will not disturb a child support order. Paulyv. Pauly (1997), 80 Ohio St.3d 386, 390. At the time a trial court orders child support, a child support guideline computation worksheet must be completed and made a part of the trial court's record. Marker v. Grimm (1992), 65 Ohio St.3d 139, at paragraph one of the syllabus; R.C. 3119.022. The guideline amount is rebuttably presumed to be the correct amount of child support due, although deviation from the guidelines is addressed in the worksheet. See Marker, supra, and R.C. 3119.03; R.C. 3119.022.
 {¶ 14} Leslie presents three specific arguments with regard to the trial court's deviation from the guideline amount, the first of which is that the court is prohibited from modifying an existing child support obligation if there has not been a showing that there is a ten percent difference between the existing and proposed child support orders. Leslie contends the ten percent requirement in R.C. 3119.79(A) must be read in conjunction with R.C. 3119.79(C) to always require a ten percent change in order to modify a child support order.
 {¶ 15} We disagree with Leslie's reading of R.C. 3119.79(A) and (C), which provide:
(A) If an obligor or obligee under a child support order requests that the court modify the amount of support required to be paid pursuant to the child support order, the court shall recalculate the amount of support that would be required to be paid under the child support order in accordance with the schedule and the applicable worksheet through the line establishing the actual annual obligation. If that amount as recalculated is more than ten per cent greater than or more than ten per cent less than the amount of child support required to be paid pursuant to the existing child support order, the deviation from the recalculated amount that would be required to be paid under the schedule and the applicable worksheet shall be considered by the court as a change of circumstance substantial enough to require a modification of the child support amount.
* * *
(C) If the court determines that the amount of child support required to be paid under the child support order should be changed due to a substantial change of circumstances that was not contemplated at the time of the issuance of the original child support order or the last modification of the child support order, the court shall modify the amount of child support required to be paid under the child support order to comply with the schedule and the applicable worksheet through the line establishing the actual annual obligation, unless the court determines that the amount calculated pursuant to the basic child support schedule and pursuant to the applicable worksheet would be unjust or inappropriate and would not be in the best interest of the child and enters in the journal the figure, determination, and findings specified in section 3119.22 of the Revised Code.
The language of neither R.C. 3119.79(A) nor (C) indicate that a ten percent change in the amount of child support due is required when there has been a substantial change of circumstances that was not contemplated at the time of the issuance of the original child support order, as provided in subsection (C). This court, as well as others, have read R.C. 3119.79(C) to provide an independent basis for permitting modification of an existing child support order without consideration of the ten percent change discussed in subsection (A). See Flege v. Flege, Butler App. No. CA2003-05-111, 2004-Ohio-1929, at ¶ 33 (a substantial change may be shown under R.C. 3119.79[C] where there is a more than ten percent difference in the amount of child support that the obligor is currently required to pay; as well, if the trial court finds that there is a substantial change in circumstances not contemplated at the time of the original child support order, it may also modify the order under 3119.79[C]); Thompson v.Boivin, Hamilton App. No. C-010697, 2002-Ohio-4628, at ¶ 19 (magistrate erred in dismissing motion to modify without affording movant an opportunity to present evidence as to any change in circumstances, other than the ten-percent rule of R.C.3119.79[A], that would justify a reduction in his child support obligation); Roche v. Roche (Mar. 19, 2002), Mahoning App. No. 01 C.A. 3 (even if there has not been a ten percent change in the amount of child support, a showing of a substantial change of circumstances that was not contemplated at the time of the issuance of the original child support order may independently support the modification of a child support order); Kreuzer v.Kreuzer (May 4, 2001), Greene App. No. 00CA43 (considered whether incarceration or unemployment constituted substantial change in circumstances without addressing whether there had been a ten percent change in the child support amount); Smith v.Smith (Feb. 10, 2000), Franklin App. No. 99AP-453 (termination of the shared parenting agreement and change in residential parent and legal custodian constitutes a substantial change of circumstances that was not contemplated at the time of the issuance of the original child support order), citing Rossi v.Rossi (Sept. 15, 1998), Franklin App. No. 97APF12-1584. Further, one commentator on the issue has found that, in determining whether a change of circumstances exists, "[R.C. 3119.79(A)] provides that a difference of 10% is deemed a change of circumstances. * * * Other substantial changes of circumstances not contemplated when the last order was issued or modified may also be considered [under R.C. 3119.79(C)]." Sowald 
Morganstern, Domestic Relations Law (4 Ed. 2002) 950, Section 19.17. We find our prior precedent and the additional cited authorities compelling and find that a change of circumstances sufficient to support modification of an existing child support order may be found under R.C. 3119.79(C) even though there has not been a ten percent change in the amount of child support that the obligor is currently required to pay under R.C. 3119.79(A). Further, as the trial court explained, "[t]o sustain Leslie's argument would set an unfortunate precedent that would tie the court's hands in cases where parental alienation has occurred, but the 10% threshold has not been met." For these reasons, we find Leslie's argument, in this respect, without merit.
 {¶ 16} Leslie next argues under this assignment of error that the trial court erred when, in calculating child support, it credited Stephen for income tax payments that he had yet to make. The court found, via its affirmation of the magistrate's decision, that, although Stephen had not paid any income taxes for several years, he still owes them, and they must be considered in calculating his self-employment income. The magistrate also indicated that, because she had deducted his income based on his estimated taxes, she would not give him credit when the taxes are eventually paid in the future. Leslie contends that there is no evidence when Stephen will pay these tax obligations or if he will pay the obligations in full. We must reject Leslie's arguments. Although Leslie urges that any credit for income taxes should be given at the time Stephen pays them, and this may seem a surer way to guarantee that Stephen will only be given credit for the unpaid taxes if and when he actually pays them, given our standard of review is an abuse of discretion in matters of child support calculation, we cannot say the trial court's method of calculating Stephen's income rises to the level of being arbitrary or unconscionable. Thus, we cannot say the trial court abused its discretion in giving Stephen credit for income taxes he has not yet paid.
 {¶ 17} Leslie also argues that the trial court abused its discretion in deviating from the child support guidelines amount based upon a finding that the support as calculated was unjust, inappropriate, and not in the minor children's best interest. Pursuant to R.C. 3119.79(C), if the court determines that the amount of child support required to be paid under the child support order should be changed due to a substantial change of circumstances, the court must modify the amount of child support to comply with the child support guidelines, unless the court determines that the amount calculated would be unjust or inappropriate and would not be in the best interest of the child. R.C. 3119.22 provides that a court may deviate from the amount of child support indicated in the child support guidelines if, after considering the factors and criteria set forth in R.C. 3119.23, the court determines that the amount calculated would be unjust or inappropriate and would not be in the best interest of the child. We will not reverse a trial court's decision regarding a deviation absent an abuse of discretion. See, generally, Rock v.Cabral (1993), 67 Ohio St.3d 108, 112.
 {¶ 18} Leslie presents little argument to substantiate her claim that a deviation was not justified. The magistrate thoroughly analyzed each of the factors in R.C. 3119.23, and Leslie does not specifically contest any of the magistrate's findings. In discussing the pertinent factors, the magistrate found Stephen has a child support arrearage of $94.26 per month, plus processing charge (see R.C. 3119.23[C]); Stephen has incurred nearly $16,000 in costs associated with supervised parenting time (see R.C. 3119.23[D]); both children have trust funds established by their maternal grandparents (see R.C.3119.23[F]); Leslie earns substantially more income than Stephen (see R.C. 3119.23[G]); Leslie pays $24,000 per year for the children to attend private school (see R.C. 3119.23[J]); Leslie has significantly more income and assets than Stephen (see R.C.3119.23[K]); Stephen's standard of living is lower than Leslie's (see R.C. 3119.23[L]); and the children have no major health problems (see R.C. 3119.23[M]). After a review of these factors, we cannot say the trial court abused its discretion, particularly given the high costs Stephen has incurred in exercising parental time with the children for the past several years, the disparity of income between the parties, and the various personal expenses that Leslie's solely owned company pays on her behalf. Therefore, we find Leslie's argument without merit. For these reasons, we do not find an abuse of discretion by the trial court in modifying the existing child support order and deviating from the guideline amount. Leslie's third assignment of error is overruled.
 {¶ 19} Leslie argues in her fourth assignment of error that the trial court erred when it, based upon the deviated child support obligation, reallocated the payment of uncovered medical expenses for the children between Stephen and Leslie. The magistrate found that all extraordinary uncovered medical, dental, and other healthcare expenses of the children must be split pursuant to the parties' income percentages: Stephen — 25 percent; Leslie — 75 percent. Leslie first maintains that this reallocation of uncovered medical expenses was erroneous because there was no showing of a ten percent difference between the child support order existing at the time of the trial and the new child support calculations. However, we have found under Leslie's third assignment of error that the trial court did not err in modifying the existing order based upon a substantial change in circumstances that did not exist at the time of the original order. Leslie also asserts that this reallocation of extraordinary medical expenses is based upon a child support worksheet that incorrectly took into account the payment of income taxes that Stephen has yet to pay. However, we have already addressed the issue of Stephen's unpaid income taxes in Leslie's third assignment of error and found the trial court did not abuse its discretion in taking those into account in calculating Stephen's child support obligation. Thus, these arguments are without merit, and Leslie's fourth assignment of error is overruled.
 {¶ 20} Leslie argues in her fifth assignment of error that the trial court erred when it allocated the payment of the fees of the GAL and ordered Leslie to pay 75 percent of the fees and Stephen to pay only 25 percent of the fees. Leslie first points out she was required to pay all of the legal fees of the children's attorney, and she should be given a credit on the GAL's fees based upon this fact. However, as the trial court found, Leslie failed to raise an issue with regard to the payment of the legal fees for the children's attorney and failed to present any evidence addressing these legal fees. Further, Leslie argues that she pays the children's health insurance costs and private schooling costs. However, with regard to the education costs, it was Leslie's sole choice to send the children to private school and pay $24,000 per year for the privilege of doing so, and she should not be given credit for this unilateral choice in figuring other financial obligations.
 {¶ 21} Regardless, the trial court has discretion over the amount of GAL fees, as well as the allocation to either or both of the parties. Davis v. Davis (1988), 55 Ohio App.3d 196, 200;Robbins v. Ginese (1994), 93 Ohio App.3d 370. Fees may be allocated based on the parties' litigation success, and the parties' economic status. Davis, supra. Moreover, it is proper to allocate GAL fees based upon which party caused the work of the GAL. Jarvis v. Witter, Cuyahoga App. No. 84128,2004-Ohio-6628, at ¶ 100, citing Marsala v. Marsala (July 6, 1995), Cuyahoga App. No. 67301. In the present case, the 25-75 percent split was determined based upon the relative income of the parties, which we have already found the trial court calculated accurately. Further, both the trial court and the magistrate believed Leslie engaged in alienating behavior, which, in turn, created more work for the GAL. Her behavior created a conflict between the unsupervised parenting time suggested by the GAL and the supervised parenting time desired by the children. See Marsala, supra (because mother's behavior in attempting to alienate the children from their father, mother was required to pay all of the GAL's fees). For these reasons, we cannot find an abuse of discretion in the trial court's allocation of GAL fees, and Leslie's fifth assignment of error is overruled.
 {¶ 22} Leslie argues in her sixth assignment of error that the trial court erred when it ordered her to pay Stephen the sum of $9,000 for attorney fees pursuant to R.C. 3105.73. Leslie first asserts that the trial court was required to consider the issue of attorney fees under former R.C. 3105.18(H), which was in effect at the time of the magistrate's decision but was repealed prior to the trial court's decision on the parties' objections, and not R.C. 3105.73, which became effective after the magistrate's decision but before the trial court issued its judgment. Thus, Leslie argues that the trial court improperly applied R.C. 3105.73 retroactively.
 {¶ 23} Under R.C. 3105.18(H), in order for a trial court to award attorney fees to a party under R.C. 3105.18(H), it had to find: (1) the other party has the ability to pay the fees; (2) the party seeking fees needs them to fully litigate his/her rights and adequately protect his/her interests; and (3) the fees requested are reasonable. Tonti v. Tonti, Franklin App. No. 03AP-494, 2004-Ohio-2529. By contrast, R.C. 3105.73(B)'s requirements for findings by the court are less burdensome. Under R.C. 3105.73(B), in any post-decree motion or proceeding, the court may award reasonable attorney fees and litigation expenses to either party if it merely finds the award equitable. R.C.3105.73(B). In determining whether an award is equitable, the court may consider the parties' income, the conduct of the parties, and any other relevant factors the court deems appropriate, but it may not consider the parties' assets. Id.
 {¶ 24} Here, we disagree with Leslie's contention that the trial court improperly considered attorney fees under R.C.3105.73. This court has recently held that R.C. 3105.73 is retroactive in its application and applies to cases pending prior to April 27, 2005, but decided after that date. See Heyman v.Heyman, Franklin App. No. 05AP-475, 2006-Ohio-1345, at ¶ 7-13;Carter v. Carter, Franklin App. No. 05AP-745, 2006-Ohio-1206, at ¶ 14-15. At least one other court has agreed with the outcome in Heyman. See Berthelot v. Berthelot, Summit App. No. 22819,2006-Ohio-1317, at ¶ 69. In the present case, the magistrate issued her decision on March 7, 2005, while R.C. 3105.18(H) was in effect. R.C. 3105.73 became effective on April 27, 2005. On July 20, 2005, the trial court issued its judgment. Thus, pursuant to Heyman and Carter, the trial court was required to consider any attorney fee award under R.C. 3105.73.
 {¶ 25} Leslie presents no further argument that the trial court erred in granting Stephen attorney fees under R.C. 3105.73. Notwithstanding, an award of attorney fees lies within the sound discretion of the court, Rand v. Rand (1985),18 Ohio St.3d 356, and, after a review of the record in the present case, we find the trial court did not abuse its discretion in ordering Leslie to pay $9,000 of Stephen's attorney fees. The trial court found the award equitable based upon Leslie's detrimental conduct in alienating the children from Stephen and the disparity in the parties' income. The conduct of the parties is a relevant factor in determining whether an award of attorney fees is equitable. See R.C. 3105.73. Further, Stephen earns approximately $40,000 per year, and Leslie earns approximately $124,000 per year. A disparity in the parties' income may also be a basis for awarding attorney fees. See id.; see, also, Napier v. Napier, Tuscarawas App. No. 2005 AP 05 0030, 2006-Ohio-438, at ¶ 118 (trial court did not err in ordering husband to pay $9,000 of wife's $12,000 in attorney fees, as he earned approximately $100,000 a year and the wife earned less than $30,000 a year); Meadows v. Meadows,
Stark App. No. 2005CA00326, 2006-Ohio-2432 (given the earning disparity of the parties, trial court did not abuse its discretion in awarding attorney fees). For these reasons, we find the trial court did not abuse its discretion in its award of attorney fees to Stephen. Therefore, Leslie's sixth assignment of error is overruled.
 {¶ 26} Accordingly, Leslie's six assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, is affirmed.
Judgment affirmed.
Klatt, P.J., and Travis, J., concur.