OPINION
{¶ 1} Plaintiff-appellant, Richard O. Parker, appeals from a judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, granting plaintiff and defendant-appellee, Michelle A. Parker ("Michelle"), a divorce from each other, allocating the marital property, and determining parental rights and responsibilities. Because the trial court improperly found plaintiff guilty of financial misconduct, we affirm in part and reverse in part.
 {¶ 2} Plaintiff and Michelle were married on February 19, 1994. On January 17, 2003, Cora Anne Parker was born as issue of their marriage. During the pregnancy, plaintiff was transferred from his job in New Hampshire to Columbus, Ohio, and began working in the central Ohio area for extended periods of time. The parties intended to place their New Hampshire home on the market and eventually move to Ohio.
 {¶ 3} Approximately one month prior to Cora's birth, plaintiff met Sarah Bennett in Columbus and began an affair with her; a few days after Cora's birth, plaintiff was in Columbus on a business trip and had sexual relations with Bennett. In March 2003, Michelle discovered the affair and confronted plaintiff. Plaintiff claimed the affair was with a woman who lived in Pennsylvania, but Michelle learned otherwise. Rather than move to Columbus with plaintiff, Michelle opted to move, with Cora, to South Carolina near her sister; plaintiff supported the move.
 {¶ 4} Plaintiff attempted to reconcile with Michelle and maintain his marriage. In May 2003, plaintiff told Michelle he would cease the affair with Bennett and did so as of July 2003. During the ensuing months, Michelle and Cora made several trips to Columbus, and Michelle eventually agreed to move to Columbus with plaintiff. Meanwhile, the New Hampshire home sold; the parties realized nearly $100,000 as equity from the sale and deposited the proceeds into their New Hampshire joint checking account. As of September 18, 2003, the New Hampshire account balance was $96,958.74.
 {¶ 5} Between the months of July and October, Bennett attempted to contact plaintiff, but plaintiff did not resume sexual relations with her. In October 2003, the parties purchased a home in the Westerville area for a purchase price of $337,000, using $34,792.62 from the New Hampshire account as a down payment on the home. On the day of closing, Michelle overheard a conversation between plaintiff and Bennett. At the time, plaintiff denied he was talking to Bennett and said he was speaking to his boss.
 {¶ 6} The week of December 1, 2003, Michelle and Cora moved to the Westerville home with plaintiff. Approximately five days later, plaintiff went on a business trip to California. Upon his return, plaintiff told Michelle he was having second thoughts about the marriage. Michelle became angry and told plaintiff he had to decide, because she moved to Ohio for him. In response, plaintiff informed Michelle he was in love with Bennett and intended to continue seeing her. On December 23, 2003, Michelle filed for divorce in Franklin County but, on the advice of prior counsel, dismissed her complaint and moved back to South Carolina with Cora. Plaintiff filed a complaint for divorce on February 2, 2004.
 {¶ 7} Between December 31, 2003 and May 2004, Michelle used $9,375 from the parties' joint checking account for living expenses for herself and Cora. During that time, plaintiff was not providing any funds to Michelle; as was true during the marriage, Michelle was not employed and had no source of income. Plaintiff testified he was aware that Michelle was using the funds for living expenses.
 {¶ 8} During the divorce proceedings, the parties agreed to a temporary visitation order that required Cora to travel to Columbus every other month for a period of time that gradually increased with each visit. Plaintiff also visited Cora in South Carolina during the months Cora did not travel to Columbus. In June 2005, the parties sold the Westerville home for less than the purchase price, suffering a loss of $24,410.70.
 {¶ 9} After three days of testimony, the trial court determined the following issues pertinent to this appeal: (1) the loss resulting from the sale of the Westerville home was the result of plaintiff's financial misconduct, and so the trial court treated the amount of the down payment, $34,793, as a distributive award to plaintiff on the marital balance sheet; (2) the funds Michelle spent for living expenses between December 31, 2003 and May 2004 totaling $9,375 were not subject to equal marital distribution; (3) the shared parenting agreement plaintiff proposed was not in Cora's best interest at the time; (4) the model parenting schedule set forth in Loc.R. 27 was appropriate once Cora reached school age; and (5) Michelle is entitled to $20,000 in attorney fees.
 {¶ 10} Plaintiff appeals, assigning the following errors:
[I.] The trial court's finding that the plaintiff committed financial misconduct was against the weight of the evidence and constituted an abuse of discretion.
[II.] The trial court abused its discretion by failing to classify funds withdrawn by the defendant from the parties' joint checking account as marital property.
[III.] The trial court abused its discretion by rejecting the plaintiff's proposed shared parenting plan.
[IV.] The trial court abused its discretion by placing additional limitations on the parenting time awarded to the plaintiff once the minor child reaches school age.
[V.] The trial court abused its discretion by awarding attorney fees to the defendant.
 {¶ 11} In the first assignment of error, plaintiff contends the trial court erred in finding that plaintiff committed financial misconduct. The court found financial misconduct because it determined that Michelle would not have closed on the house had she known plaintiff was on the phone with Bennett the day of the closing. To compensate Michelle, the trial court treated the $34,793 down payment on the Westerville home as a distributive award to plaintiff on the marital balance sheet.
 {¶ 12} R.C. 3105.171(E)(3) provides that "[i]f a spouse has engaged in financial misconduct, including, but not limited to, the dissipation, destruction, concealment, or fraudulent disposition of assets, the court may compensate the offended spouse with a distributive award or with a greater award of marital property." A "distributive award" is defined "as any payment or payments, in real or personal property, that are payable in a lump sum or over time, in fixed amounts, that are made from separate property or income, and that are not made from marital property." R.C. 3105.171(A)(1). The burden of proving financial misconduct is on the complaining spouse. Mantle v.Sterry, Franklin App. No. 02AP-286, 2003-Ohio-6058. The trial court has discretion in determining whether a spouse committed financial misconduct, subject to a review of whether the determination is against the manifest weight of the evidence. Id., citing Babka v. Babka (1992), 83 Ohio App.3d 428.
 {¶ 13} The financial misconduct statute applies in situations where one spouse engages in some type of knowing wrongdoing.Sterry, supra. Financial misconduct "involves some element of profit or interference with another's property rights." Id. As examples, "[t]his court has affirmed findings of financial misconduct in cases where a party has violated the court's restraining orders, dissipated marital assets without the knowledge or permission of the other party, stolen equipment, inventory and records of the party's business so as to interfere with the continued operation of the business, cashed an insurance check and used all of the money for the party's own purposes, and sold stock owned by the other party, without the other party's knowledge or permission." Id. (Citations omitted.)
 {¶ 14} In this case, plaintiff did not personally profit from the sale of the Westerville home; nor did he engage in any conduct for the sole purpose of defeating Michelle's interest in the property. The Westerville home simply sold for a lower price than the parties' purchase price. No evidence suggested plaintiff purposely incurred the loss; indeed, both parties were affected. See Wideman v. Wideman, Wood App. No. WD-020-30, 2003-Ohio-1858. Plaintiff undisputedly convinced Michelle to move to Columbus despite his relationship with Bennett, but nothing in the record suggests plaintiff purposely deceived Michelle regarding the status of plaintiff's relationship with Bennett. Although plaintiff clearly had mixed feelings about his marriage, such behavior does not rise to the level of financial misconduct as this court has defined it. The trial court erred in its determining plaintiff committed financial misconduct.
 {¶ 15} Michelle argues that even if plaintiff did not commit financial misconduct, the distributive award was equitable and within the trial court's discretion. The trial court, however, based the distributive award on its finding of financial misconduct. Because the finding was error, we cannot ascertain what the trial court would have done absent the erroneous finding. Accordingly, we must remand to the trial court for a recalculation of marital assets. Plaintiff's first assignment of error is sustained.
 {¶ 16} Plaintiff's second assignment of error maintains the trial court erred in failing to classify as marital property the funds Michelle withdrew from the parties' joint checking account. As of December 31, 2003, the de facto termination date of the marriage, the parties' joint checking account contained $28,311. The trial court found that in January 2004, Michelle opened a new account with Wachovia Bank in South Carolina that carried a zero balance. In February 2004, with plaintiff's knowledge and consent, Michelle withdrew $15,000 from the joint account and deposited the money in her Wachovia account. Between December 31, 2003 and May 2004, when plaintiff began making regular support payments, Michelle used $9,375 for living expenses for herself and Cora, leaving a balance of $3,936. The trial court decided that to include the funds Michelle spent on the marital balance sheet would be inequitable, so the court awarded Michelle $9,375 and awarded one-half of the balance in the account to each party.
 {¶ 17} In divorce proceedings, the trial court determines what constitutes marital property and what constitutes separate property. R.C. 3105.171(B). The court then must "divide the marital and separate property equitably between the spouses." Id. "Marital" property is defined, in part, as real and personal property the parties currently own that was acquired during the marriage. R.C. 3105.171(A)(3)(a)(i). Martial property shall be divided equally unless an equal division would be inequitable. R.C. 3105.171(C)(1). If an equal division would be inequitable, the court must divide the property equitably between the spouses. Id.
 {¶ 18} R.C. 3105.171(A)(6)(a) defines "separate" property as all real and personal property and any interest in real or personal property that is found to be any of the following: (1) one spouse's inheritance by bequest, devise, or descent during the course of the marriage; (2) any real or personal property or interest in real or personal property that one spouse acquired prior to the marriage; (3) passive income and appreciation one spouse acquired from separate property during the marriage; (4) any real or personal property or interest in real or personal property one spouse acquired after a decree of legal separation; (5) any real or personal property or interest in real or personal property that is excluded by a valid antenuptial agreement; (6) compensation to a spouse for the spouse's personal injury; or (7) any gift of any real or personal property or of an interest in real or personal property that is made after the date of the marriage and that is proven by clear and convincing evidence to have been given to only one spouse.
 {¶ 19} We review the trial court's classification of property as either marital or separate to determine whether the finding is supported by competent, credible evidence. Bucalo v. Bucalo,
Medina App. No. 05CA0011-M, 2005-Ohio-6319, at ¶ 12, citingBarkley v. Barkley (1997), 119 Ohio App.3d 155. Once the trial court characterizes the property as either marital or separate, the court has discretion to fashion an equitable division.Neighbarger v. Neighbarger, Franklin App. No. 05AP-651, 2006-Ohio-796, at ¶ 15 (stating that "[a] trial court has broad discretion in making divisions of property"). Because the trial court is in the best position to observe the demeanor of the witnesses and weigh the credibility of the proffered testimony, we are guided by the presumption that the findings of the trial court are correct. Id.
 {¶ 20} Here, although the trial court's divorce decree does not specifically classify the funds as separate property, the decree adopts "Exhibit A"; Exhibit A classifies the funds as Michelle's separate property. Because the trial court did not specify a basis for concluding the funds are Michelle's separate property, and because we do not ascertain any basis for so determining, we are compelled to conclude the trial court erred. We recognize, however, that the equities of the case may support the trial court's allocation, even though the property be separate. Michelle testified that after she moved from New Hampshire to South Carolina, she had no income and received no financial support from plaintiff until May 2004, when the temporary orders took effect. Although plaintiff claims he gave money to Michelle during this time, his contributions were sporadic and insufficient at best. Significantly, plaintiff was aware that Michelle was using the funds to support herself and Cora in South Carolina. Nonetheless, because we are returning this matter to the trial court under plaintiff's first assignment of error, we sustain his second assignment of error to the limited extent of allowing the trial court to consider allocation of the funds as marital property. Plaintiff's second assignment of error is sustained to the extent indicated.
 {¶ 21} In the third assignment of error, plaintiff contends the trial court erred in rejecting his proposed shared parenting plan. Under plaintiff's proposed plan, Cora would spend nine days, comprised of two long weekends, of every month in Ohio. Concluding that shared parenting was not in Cora's best interest at the time, the trial court ordered that (1) Cora be flown to Ohio every odd-numbered month for nine consecutive days; (2) plaintiff have parenting time with Cora in South Carolina for up to four days in the even-numbered months; and (3) plaintiff be allowed to visit Cora in South Carolina, if plaintiff is in the area, in odd-numbered months upon reasonable advance notice to Michelle.
 {¶ 22} The trial court found persuasive, and premised its decision on, the testimony of Cora's babysitter during the relevant time, Lynlee Harris, that Cora was irritable and cranky upon her return from Ohio. The trial court further concluded that while the parties successfully negotiated temporary visitation orders, the evidence demonstrated that their very different views about flying Cora to Ohio every month led to disagreement between them.
 {¶ 23} "The trial court is vested with broad discretion to decide matters relating to the allocation of parental rights and responsibilities for the care of minor children, and its decision is subject to reversal only upon a showing of an abuse of that discretion." Donovan v. Donovan (1996), 110 Ohio App.3d 615,618. Similarly, under R.C. 3109.04(D), the trial court has authority to order or reject shared parenting, and its decision is discretionary. Id., citing deLevie v. deLevie (1993),86 Ohio App.3d 531. An abuse of discretion is more than an error of law or judgment; it implies the court's attitude was unreasonable, arbitrary, or unconscionable. Id.
 {¶ 24} Pursuant to R.C. 3109.04(A), the trial court is required to allocate the parental rights and responsibilities for the care of the minor children of the marriage. If one parent proposes a shared parenting plan, and if a shared parenting plan is in the best interest of the child, the court may issue a shared parenting order. R.C. 3109.04(A)(2). When allocating parental rights and responsibilities for the care of the children, the trial court must "take into account that which would be in the best interest of the children." R.C.3109.04(B)(1).
 {¶ 25} While the factors listed in R.C. 3109.04(F)(1) to assess the best interest of the child were amended in April 2005, the factors set forth in the prior version of the statute, utilized in the trial court, appear to be the same or substantially similar insofar as they are pertinent to this case. In addition to those factors, the trial court must consider the following factors in determining whether "shared parenting" is in the child's best interest: "(a) [t]he ability of the parents to cooperate and make decisions jointly, with respect to the children; (b) [t]he ability of each parent to encourage the sharing of love, affection, and contact between the child and the other parent; (c) [a]ny history of, or potential for, child abuse, spouse abuse, other domestic violence, or parental kidnapping by either parent; (d) [t]he geographic proximity of the parents to each other, as the proximity relates to the practical considerations of shared parenting; and (e) [t]he recommendation of the guardian ad litem of the child, if the child has a guardian ad litem." R.C. 3109.04(F)(2)(a) through (e).
 {¶ 26} Plaintiff asserts the trial court improperly relied on Harris' testimony regarding the effect of Cora's trips to Ohio on her. During the first few extended visits to Ohio, certain restrictions were in place. For example, Bennett, who lived an hour away from plaintiff at the time, cared for Cora while plaintiff was at work. Because Cora was not allowed in Bennett's home and Bennett was not allowed in plaintiff's home, Bennett had to perform her care taking at a different location, putting Cora unavoidably off her normal routine. Plaintiff urges that because those restrictions were lifted prior to trial, Cora would better be able to adjust to her trips and maintain an appropriate schedule. To support his contentions, plaintiff points to testimony that Cora is happy, well-adjusted and needs a close relationship with her father. Plaintiff also challenges the trial court's conclusion that the parties may not be able to cooperate with each other under a shared parenting plan.
 {¶ 27} We cannot say the trial court's decision to reject plaintiff's proposed shared parenting plan was unreasonable, arbitrary, or unconscionable. To the contrary, the trial court carefully reviewed each applicable statutory factor and determined that traveling to Ohio every month was too much for Cora to handle at her age. Not only did Michelle strongly oppose such a schedule, but both Harris and Michelle testified that Cora is so irritable and tired when she returns to South Carolina from Ohio that she requires several days to adjust.
 {¶ 28} The trial court found Harris' testimony credible, and if believed, it, coupled with the additional factors present here, supports the trial court's decision regarding allocation of parental rights and responsibilities. Although variations in Cora's schedule while she visits plaintiff are inevitable, the fact remains that Cora is a three-year-old child who must travel by airplane to visit plaintiff and, for at least the next few years, cannot travel without someone accompanying her. Given Cora's age, the geographic proximity of the parties unquestionably negatively impacts the reasonableness and practicality of any proposed shared parenting. In addition, plaintiff's work schedule is more flexible than Michelle's schedule, and because plaintiff receives a significant amount of vacation time each year, he is better able to vary his hours as needed.
 {¶ 29} Plaintiff also attempts to characterize Michelle's four-day workweek as time not spent with Cora, but the same argument applies to plaintiff. Indeed, plaintiff's plans for Cora while he is at work present another aspect of the parties' lives that renders shared parenting difficult. Specifically, when plaintiff must work during Cora's visits, Bennett is Cora's babysitter, leading Bennett to communicate via e-mail with Michelle regarding Cora's visits, to write notes and cards following Cora's visits, and to compile photo albums for Cora with Bennett's picture in them.
 {¶ 30} Michelle understandably is uncomfortable with Bennett's involvement and finds difficult the communication with her and plaintiff regarding Cora that follows Cora's visits. Despite Bennett's testimony that she would cease such communications, Michelle previously requested same without success. Given the disagreements that have arisen, Michelle also was concerned with the mediation provision in plaintiff's proposed plan that required mediation if the parties disagreed about a parenting matter: Michelle worried she would have to fly to Ohio to resolve the matter. Under the circumstances, the trial court did not err in finding that the parties may have difficulty making joint decisions about Cora.
 {¶ 31} Testimony further revealed that since Cora's birth, Michelle has been Cora's primary caretaker, as Michelle and plaintiff did not live together very long after Cora's birth. Plaintiff acknowledges that Michelle makes good decisions regarding Cora's care. With respect to plaintiff's concern about maintaining a close relationship with Cora, Michelle acknowledges the importance of a strong relationship between Cora and plaintiff and intends to encourage that relationship. Despite the end of their marriage, the parties care about each other to the degree they are willing to foster relationships with the respective families. Given the foregoing, we cannot say the trial court abused its discretion in rejecting plaintiff's proposed shared parenting plan. Accordingly, plaintiff's third assignment of error is overruled.
 {¶ 32} In the fourth assignment of error, plaintiff contends the trial court abused its discretion in adopting "long distance" Loc.R. 27 as the visitation schedule once Cora attains school age. The trial court adopted Loc.R. 27 with the modification that the summer parenting periods be divided so that each parent alternately exercises two consecutive weeks of parenting at a time. Again, the trial court is vested with broad discretion to decide matters involving visitation rights, and its decision is subject to reversal only upon a showing of an abuse of that discretion. Askin v. Askin (Jan. 26, 1995), Franklin App. No. 94APF05-720, citing Appleby v. Appleby (1986),24 Ohio St.3d 39.
 {¶ 33} The trial court did not err in failing to grant plaintiff a more liberal visitation schedule than that set forth in Loc.R. 27. Cora's attaining school age mandates a significant modification to the pre-school age parenting schedule. Given the distance between the parties' residences, the travel time and expense involved, and the parties' respective schedules, Loc.R. 27 provides Cora with a stable routine and is a reasonable and practical alternative under the facts of this case. Should the schedule prove less than reasonable, either party may petition the court for a modification at that time.
 {¶ 34} We note that throughout his brief plaintiff focuses heavily on Michelle's move to South Carolina, an inconvenience in the current custody situation. Plaintiff, however, posits no reason for Michelle to stay in Columbus after the marriage failed: she had neither family nor close friends in Columbus, but moved only because plaintiff's employment brought him to Columbus. Michelle was in Columbus only a few weeks before permanently relocating, and had no job in Columbus. Because her sister lived in South Carolina, Michelle reasonably relocated there with Cora. Plaintiff's fourth assignment of error is overruled.
 {¶ 35} Plaintiff's fifth assignment of error asserts the trial court erred in awarding Michelle $20,000 in attorney fees. Michelle incurred $44,808 in legal fees in this action for divorce; at the time of trial, Michelle still owed $13,833.
 {¶ 36} Pursuant to R.C. 3105.73(A), in an action for divorce, "a court may award all or part of reasonable attorney's fees and litigation expenses to either party if the court finds the award equitable. In determining whether an award is equitable, the court may consider the parties' marital assets and income, any award of temporary spousal support, the conduct of the parties, and any other relevant factors the court deems appropriate." An award of attorney fees in divorce proceedings lies within the sound discretion of the trial court. Karales v. Karales,
Franklin App. No. 05AP-856, 2006-Ohio-2963.
 {¶ 37} Here, the award of attorney fees to Michelle was not arbitrary, unreasonable or unconscionable. The trial court based the award on the conduct of the parties, including plaintiff's conduct that caused Michelle and Cora to relocate to Ohio only to discover plaintiff's involvement with another woman precipitated a costly divorce. R.C. 3105.73(A). Further, plaintiff enjoys a substantially higher income than Michelle, and no evidence suggests plaintiff does not have the ability to pay. Karales,
supra. The trial court properly weighed the equities involved and it awarded $20,000, less than one-half of the requested fees. Because the trial court did not abuse its discretion in awarding attorney fees, plaintiff's fifth assignment of error is overruled.
 {¶ 38} Having overruled plaintiff's third, fourth, and fifth assignments of error, but having sustained plaintiff's first assignment of error and his second assignment of error to the extent indicated, we affirm in part and reverse in part the judgment of the trial court, and we remand this matter to the trial court for further proceedings consistent with this opinion.
Judgment affirmed in part and reversed in part; caseremanded.
French and Travis, JJ., concur.