[Cite as *Kane v. Hardin*, 2019-Ohio-4362.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

COLEMAN A. KANE,                    :          APPEAL NO. C-180525
                                               TRIAL NO. DR1301410
    Plaintiff-Appellee,        :
                                                    *O P I N I O N.*
  vs.                             :

CHERYL A. HARDIN,                   :

    Defendant-Appellant.       :


Appeal From:   Hamilton County Court of Common Pleas, Domestic Relations Division

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:  October 25, 2019


*Godbey Law* and *Edwin L. Vardiman, Jr.*, for Plaintiff-Appellee,

*Stagnaro Hannigan Koop, Co., LPA,* and *Michaela M. Stagnaro*, for Defendant-Appellant.

**CROUSE, Judge.**

{¶1}    Defendant-appellant Cheryl Hardin appeals the decision of the Hamilton County Court of Common Pleas, Domestic Relations Division, modifying the terms of the parties' shared-parenting plan.  For the reasons set forth below, we affirm the trial court's judgment.

## I.  Facts and Procedure

{¶2}    The parties married in 2006.  They had one child during the marriage.  In 2013, plaintiff-appellee Coleman Kane filed for divorce.  The court issued a final divorce decree and a final decree of shared parenting on February 19, 2015.

{¶3}    Kane twice sought to terminate shared parenting and become the sole residential parent.  Kane filed his first motion to terminate shared parenting on October 14, 2016, and subsequently dismissed the motion on December 21, 2016.  Kane filed a second motion to terminate shared parenting on January 11, 2017.  In November 2017, pursuant to recommendations of the court's parenting time department, Kane orally agreed to instead modify the existing shared-parenting plan.

{¶4}    After eight months of attempted settlement negotiations, the parties were unable to agree on changes to seven provisions in the plan.  The parties proceeded to trial on those seven provisions, and the trial court granted modification of the terms in favor of Kane.

{¶5}    In five assignments of error, Hardin argues that the trial court erred in modifying certain provisions of the parties' shared-parenting plan.  Specifically, Hardin contends that the court should not have removed her right of first refusal, allocated all childcare and activity costs to Kane, awarded the dependency tax exemption to Kane every year, ordered her to pay half of the outstanding guardian ad litem fees, or ordered her to pay half of Kane's attorney fees.

### II. Law and Analysis

{¶6}    "[C]ustody issues are some of the most difficult and agonizing decisions a trial judge must make.  Therefore, a trial judge must have wide latitude in considering all the evidence before him * * * and such a decision must not be reversed absent an abuse of discretion."  *Davis v. Flickinger*, 77 Ohio St.3d 415, 418, 674 N.E.2d 1159 (1997).  "Abuse of discretion" implies that the trial court's decision was unreasonable or arbitrary.  *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).  "It is not sufficient for an appellate court to determine that a trial court abused its discretion simply because the appellate court might not have reached the same conclusion."  *State v. Morris*, 132 Ohio St.3d 337, 2012-Ohio-2407, 510 N.E.2d 343, ¶ 14.

#### 1.    Right-of-First-Refusal Provision

{¶7}    In her first assignment of error, Hardin argues that the trial court erred by removing the right-of-first-refusal language from the parties' shared-parenting plan.  The shared-parenting plan provided: "The parent shall notify the other parent of their event of leave from the child [during their parenting time for a duration greater than three hours] and shall offer the other parent the right to have the child during the duration before they utilize any other child care options."  Although Hardin agrees that the three-hour right of first refusal was no longer feasible, Hardin contends that the court's denial of an overnight right of first refusal was unreasonable.

{¶8}    Upon the request of one or both of the parents under a shared-parenting plan, the trial court may modify the terms of the decree.  R.C. 3109.04(E)(2)(b).  To make any modification to the plan, the court must find that the modification is in the best interest of the child.  *Id.*  In determining the best interest of

3

the child pursuant to R.C. 3109.04(E)(2)(b), the court must consider all relevant factors, including:

    (a) The wishes of the child's parents regarding the child's care;

    (b) If the court has interviewed the child in chambers * * *, the wishes and concerns of the child, as expressed to the court;

    (c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;

    (d) The child's adjustment to the child's home, school, and community;

    (e) The mental and physical health of all persons involved in the situation;

    (f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;

    (g) Whether either parent has failed to make all child support payments * * *;

    (h) Whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child * * *;

    (i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;

    (j) Whether either parent has established a residence, or is planning to establish a residence, outside this state.

R.C. 3109.04(F)(1).

{¶9} Here, the trial court particularly focused on the child's adjustment to her home, school, and community. The court found that the right of first refusal was not in the child's best interest because "it disrupts [the child's] life." Specifically, the court stated that "[the child] needs a predictable parenting schedule, a schedule under which she knows when she is in [Kane's] care and when she is in [Hardin's] care." Therefore, the court held that "[w]hen a parent has overnight travel requirements while exercising parenting time with [the child], that parent should also arrange safe and appropriate alternative care for her."

{¶10} The trial court also considered the child's interrelationship with her parents and any other person who may significantly affect her best interest. The court determined that removing the right of first refusal would "promote [the child's] sense of her parents' equal roles in her upbringing and empower each parent to exercise parental rights." The court further concluded that "removing the right of first refusal from the plan removes a contentious issue and reduces the potential for conflict between the parties; reducing parental conflict is certainly in [the child's] best interest."

{¶11} Contrary to Hardin's assertion, the court's decision did not give Kane's fiancée "paramount rights to the care, custody and control of the child over the rights of the child's actual parent." Kane's fiancée was neither named nor referenced in the court's decision. Rather, the court allowed Kane to arrange "safe and appropriate alternative care" for the child when he has overnight travel requirements. The court, therefore, allowed Kane the right to choose *any* responsible guardian available to provide childcare if he could not. While Hardin expresses concern for a speculative future decision to leave the child in the care of a potentially-inappropriate third-party, "there is a presumption that fit parents act in the best interest of their children."

*Harrold v. Collier*, 107 Ohio St.3d 44, 2005-Ohio-5334, 836 N.E.2d 1165, ¶ 44, citing *Troxel v. Granville*, 530 U.S. 57, 68, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000).

{¶12}  Based on the foregoing, it was not unreasonable for the trial court to conclude that removing the right-of-first-refusal language from the parties' shared-parenting plan was in the best interest of the child.  Hardin's first assignment of error is overruled.

### 2. Allocation of Childcare and Activity Costs

{¶13}  In her second assignment of error, Hardin argues that the trial court erred by allocating all childcare and activity costs to Kane.

{¶14}  Again, the trial court may modify the terms of a shared-parenting plan if it determines that the modifications are in the best interest of the child.  R.C. 3109.04(E)(2)(b).

{¶15}  Here, the trial court primarily focused on reducing parental conflict.  The court found that allocating all childcare and activity costs to Kane was in the best interest of the child because it "increases opportunities for [the child] and decreases the risk of conflict between the parties."  Specifically, the court determined that "[a]llowing [Kane] to pay for all expenses actually reduces potential conflicts between [the] parties as he will be directly billed and will directly pay for all such expenses."  Therefore, the trial court's modification streamlined the process of billing and paying for activities.

{¶16}  Although Hardin asserts that allowing Kane to control all extracurricular expenses will instead increase the opportunities for conflict between the parties, Kane testified that he has traditionally paid 100 percent of the childcare and activity costs.  This includes extracurricular activities, medical-care costs, summer camps, daycare, etc.  Hardin did not dispute this assertion.  In fact, Hardin testified that, prior to trial, the parties informally agreed to have Kane perpetually pay for all after-school childcare.

Therefore, the modification was nominal in nature and the only showing of disagreement in the future was merely speculative.

{¶17} Under these circumstances, the trial court's allocation of all childcare and activity costs to Kane was not unreasonable or arbitrary. Hardin's second assignment of error is overruled.

### 3. Dependency Tax Exemption

{¶18} In her third assignment of error, Hardin argues that the trial court erred by awarding the dependency tax exemption to Kane every year.

{¶19} When determining whether to award the dependency tax exemption to a party, the trial court must consider "any net tax savings, the relative financial circumstances and needs of the parents and children, the amount of time the children spend with each parent, the eligibility of either or both parents for the federal earned income tax credit * * * and any other relevant factor concerning the best interest of the child." R.C. 3119.82.

{¶20} Although the trial court did not expressly state that a dependency tax exemption was appropriate under R.C. 3119.82, it is apparent from the factual findings of the court that it considered all relevant factors. The trial court awarded Kane the dependency tax exemption after increasing his childcare obligations. The court's decision was based on "the additional burden that [Kane] accepts under the modified shared parenting plan." The court specifically found that awarding the exemption to Kane would further the best interest of the child "by keeping more money with [Kane] to cover [the child's] childcare expenses." Notably, Kane testified that he has traditionally claimed the dependency tax exemption. Hardin did not dispute this assertion. Therefore, the modification was merely nominal in nature.

{¶21} Under these circumstances, and in light of our resolution of Hardin's second assignment of error, the trial court's allocation of the dependency tax exemption was not unreasonable or arbitrary. Hardin's third assignment of error is overruled.

### 4. Allocation of Guardian ad Litem Fees

{¶22} In her fourth assignment of error, Hardin argues that the trial court erred by ordering her to pay half of the outstanding guardian ad litem ("GAL") fees. Hardin contends that the court should have allocated the fees to reflect the parties' respective incomes.

{¶23} A trial court has broad authority to appoint a GAL and tax the costs, including the allocation of fees to either or both parties. Civ.R. 75(B). "Fees may be allocated based on the parties' litigation success, and the parties' economic status." *Karales v. Karales*, 10th Dist. Franklin No. 05AP-856, 2006-Ohio-2963, ¶ 21. It is also proper "to allocate GAL fees based upon which party caused the work of the GAL." *Id.*

{¶24} On March 27, 2017, Kane filed a motion for appointment of a guardian ad litem. Hardin raised no objection to the motion. On July 13, 2017, the court ordered the appointment of a GAL. The GAL filed a motion for allocation of expenses on May 10, 2018, and a motion for additional fees on June 27, 2018. The GAL attached a fee statement to each motion. Hardin did not dispute the hours spent or activities performed as listed in the GAL's fee statements. In fact, Hardin argues that a 50/50 allocation of GAL fees is unreasonable because the fee statements detail more communication between the GAL and Kane than between the GAL and Hardin.

{¶25} However, the testimony at trial supports a finding that Hardin "caused the work of the GAL." At trial, the GAL testified that negotiations were extended

"because [Hardin] has occasionally said she's agreed to something and then said she's not agreed to something." The GAL continued, "We would think we would have an agreement and then all of a sudden it would be [Hardin] doesn't agree to something." Based on this testimony, the court found that Hardin "repeatedly changed her mind during settlement talks" and delayed resolution of the case. Nonetheless, the court determined that the parties' economic status required an equitable, rather than equal, allocation of fees. Therefore, the trial court ordered Kane to pay the initial deposit plus half of the balance of the GAL's fees in excess of that deposit and Hardin to pay the remaining half of the fees.

{¶26} Under these circumstances, it was not arbitrary or unreasonable for the trial court to order Hardin to pay half of the outstanding GAL fees for necessitating the GAL's extended involvement. Hardin's fourth assignment of error is overruled.

### 5. Award of Attorney Fees

{¶27} In her fifth assignment of error, Hardin argues that the trial court erred by ordering her to contribute towards Kane's outstanding attorney fees.

{¶28} Pursuant to R.C. 3105.73, a court may award attorney fees to either party if the court finds the award equitable. "In determining whether an award is equitable, the court may consider the parties' income, the conduct of the parties, and any other relevant factors the court deems appropriate." R.C. 3105.73(B).

{¶29} Here, the trial court particularly focused on the conduct of the parties to determine whether an award of attorney fees was equitable. The court found that Hardin's conduct during the case delayed its resolution, citing as an example Hardin's "decision to abruptly exit the courthouse after a six-hour settlement conference without signing the parties' agreement." The testimony at trial further supported Hardin's

9

unwillingness to settle contentious issues. Kane testified that Hardin changed her position from conference to conference. Kane alleged that Hardin's changes deviated from the recommendations of the parenting department and the GAL. In total, Kane believed that the parties had agreed upon five different "final plans," including the agreement referenced in the trial court's decision.

{¶30} The trial court also considered the parties' income to determine whether an award of attorney fees was equitable. The court found that it was "unjust to order [Hardin] to pay all of [Kane's] attorney fees." Nonetheless, the court determined that "her conduct and income require[d] that she pay a portion of those fees." The court ultimately concluded that "equity requires that she pay 50% of the requested fees" and declined to award "any other litigation fees" to Kane.

{¶31} Although the trial court's decision yields a harsh result in this case, we cannot say that it amounts to an abuse of discretion. As the Tenth District Court of Appeals observed in *Long v. Long*, 10th Dist. Franklin No. 11AP-510, 2012-Ohio-6254, ¶ 16-17:

> [N]one of the specific incidents of conduct referred to by the trial court are particularly egregious when compared to what, sadly, can be viewed as common in the context of emotionally charged divorce proceedings. Nonetheless, the trial court was in the best position to assess their impact on the case and the extent to which these incidents disrupted or delayed the matter.
>
> Despite the fact that the parties * * * managed to settle a number of contentious issues before going to trial, the court could consider the overall tenor of litigation and the extent to which [the appellant's] conduct may have otherwise prolonged the matter and

10

increased costs through actions and conduct not specifically recognized in orders rendered by the court.

{¶32} Therefore, because the conduct of the parties is a relevant factor in determining whether an award of attorney fees is equitable, and the trial court found that Hardin's conduct caused and unnecessarily prolonged resolution of the motion, the decision to award attorney fees to Kane was not unreasonable or arbitrary. Hardin's fifth assignment of error is overruled.

### III. Conclusion

{¶33} We conclude that the trial court did not abuse its discretion in modifying the terms of the parties' shared-parenting plan. We also conclude that the court's decision to order Hardin to pay half of the outstanding GAL fees and half of Kane's attorney fees was neither unreasonable nor arbitrary. Consequently, we overrule the assignments of error and affirm the trial court's judgment.

Judgment affirmed.

**MOCK, P.J.,** and **MYERS, J.,** concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.

11